## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Jointly Administered Under** |
| **Lockwood Holdings, Inc., *et al.*,**[1] | § | **Case No. 18-30197** |
| | § | |
| **Debtors** | § | **(Chapter 11)** |
| | § | |

| | | |
|---|---|---|
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LOCKWOOD HOLDINGS, INC., *ET AL.*** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | **Adversary No._____** |
| **VS.** | § | |
| | § | |
| **WELLS FARGO BANK, N.A., as Administrative Agent and Lender** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

---

[1] The debtors in these cases, along with the last four digits of their respective taxpayer ID numbers, are Lockwood Holdings, Inc. (9726), LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382) (collectively, the "Debtors").

1

## TABLE OF CONTENTS

I.  NATURE OF THE ACTION ................................................................................................3

II.  JURISDICTION AND VENUE ..........................................................................................3

III. PARTIES .............................................................................................................................4

    A.  The Debtors.................................................................................................................4

    B.  The Plaintiff ...............................................................................................................4

    C.  The Defendant.............................................................................................................5

IV. GENERAL BACKGROUND................................................................................................5

    A.  Debtors' Business .......................................................................................................5

    B.  Prepetition Credit Facilities .......................................................................................5

    C.  Bankruptcy Filings and Postpetition Financing.........................................................8

    D.  Committee Investigation...........................................................................................10

V.  CAUSES OF ACTION......................................................................................................13

    COUNT I: DECLARATORY JUDGMENT THAT DEFENDANT LACKS LIENS ON
    DEBTORS' COMMERCIAL TORT CLAIMS ....................................................13

    COUNT II: AVOIDANCE OF LIENS ON DEPOSIT ACCOUNTS ...................................14

    COUNT III: AVOIDANCE OF LIENS ON RIGHTS OF PAYMENT UNDER
    BUSINESS-INTERRUPTION INSURANCE POLICIES.................................16

    COUNT IV: AVOIDANCE OF LIENS ON ASSETS SUBJECT TO CERTIFICATE-
    OF-TITLE STATUTES ........................................................................................18

    COUNT V: AVOIDANCE OF LIENS ON MONEY .........................................................21

    COUNT VI: AVOIDANCE OF LIENS ON THE AIRPLANE...........................................22

    COUNT VII: OBJECTION TO DEFENDANT'S CLAIMS ...............................................24

VI. PRAYER...........................................................................................................................25

2

## I.     NATURE OF THE ACTION

1.     Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") is the Administrative Agent and/or Lender for various prepetition loans and asserts security interests in substantially all of the Debtors' assets.   Yet Wells Fargo's liens failed to attach, were not perfected prepetition, or were perfected within the preference period, with respect to: (i) commercial tort claims; (ii) deposit accounts; (iii) rights of payment under insurance policies; (iv) assets subject to a certificate-of-title statute; (v) money; and, (vi) an aircraft.   These liens are subject to avoidance.

2.     The Committee seeks a declaratory judgment that certain of the Debtors' unencumbered property is not subject to Wells Fargo's security interests, as well as an order avoiding certain of Wells Fargo's security interests and preserving same for the benefit of the Debtors' estates.   In addition, the Committee seeks to recover from Defendant to the extent Defendant has received payments on account of these avoidable security interests.

3.     The Committee also objects to the allowance of, as well as the amount of, Defendant's claims under 11 U.S.C. § 502.

## II.     JURISDICTION AND VENUE

4.     This adversary proceeding is brought pursuant to Bankruptcy Rule 7001 and 28 U.S.C. § 2201(a) to seek relief in accordance with 11 U.S.C. §§ 502, 544, 547, 549, 550, 551 and other applicable law.   This adversary proceeding arises in and relates to the above-captioned chapter 11 cases.

5.     The District Court has jurisdiction under 28 U.S.C. § 1334. The District Court has referred the matter to this Court pursuant to 28 U.S.C. § 157(b) under the Standing Order of Reference for the Southern District of Texas.

3

1363864

6.     This adversary proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (H), (K) and (O).

7.     This Court has constitutional authority to enter final orders in this adversary proceeding and Plaintiff consents to the entry of final orders by this Court.

8.     Personal jurisdiction over Defendant exists pursuant to Bankruptcy Rule 7004.

9.     Venue is proper pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises in or relates to cases under title 11 pending in this district.

### III.     PARTIES

**A.     The Debtors**

10.     The Debtors are: (i) Lockwood Holdings, Inc. ("LHI"); (ii) LH Aviation, LLC ("LHA"); (iii) Piping Components, Inc. ("PCI"); (iv) Lockwood International, Inc. ("LII"); (v) Lockwood Enterprises, Inc. ("LEI"); (vi) LMG Manufacturing, Inc. ("LMG"); and (vii) 7807 Eagle Lane, LLC ("7807").  The Debtors are borrowers and/or guarantors under the Revolver Loan, Term Loan, and Airplane Loan, as explained in further detail below.

**B.     The Plaintiff**

11.     Plaintiff Committee is an official committee of unsecured creditors appointed in the Debtors' chapter 11 cases by the United States Trustee for the Southern District of Texas on February 20, 2018.[2]  The Committee consists of the following members: (i) OMB Valves S.p.A.; (ii) Truflo Rona S.R.L.; (iii) Cor-Pro Systems Operating, Ltd.; (iv) Hadassah Realty; and, (v) The Nut Place, Inc.[3]  The Final DIP Order provides the Committee with standing to prosecute

---

[2] *See* Dkt. No. 131.

[3] *See* Dkt. No. 171.

certain actions on behalf of the Debtors' estates.[4]   The Committee is the proper party to prosecute the claims asserted in this lawsuit.

**C.     The Defendant**

12.     Wells Fargo is the Administrative Agent and a Lender under the Revolver Loan, as well as the lender under the Term Loan (both discussed in further detail below).  Attorneys for Wells Fargo have appeared in this case and Wells Fargo has requested service via its attorneys.[5] The Summons and Complaint will be served on Wells Fargo at the address listed in the request for service: c/o Rakhee V. Patel, Esq., Winstead P.C., 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201, by U.S. first-class mail, postage prepaid.  Alternatively, under Fed. R. Bankr. P. 7004, Wells Fargo may be served by mailing the Summons and Complaint via U.S. first class mail, postage prepaid, to an officer of Wells Fargo at its principal place of business.

## IV.     GENERAL BACKGROUND

**A.     Debtors' Business**

13.     Debtors sell pipe, valves, fittings, and flanges (PVF) and engineered products (liquid handling and transfer, liquid measurement, and access and safety equipment) to customers in the petrochemical, oil and gas, and construction industries.

**B.     Prepetition Credit Facilities**

Revolver Loan

14.     On September 30, 2015, LEI, LII, LMG, and PCI entered into an Amended and Restated Credit Agreement with Trustmark National Bank (as Lender) and Wells Fargo (as Lender, Administrative Agent, Swingline Lender, and Issuing Lender), under which the Lenders

---

[4] See FINAL DIP ORDER ¶ 31(a).

[5] See NOTICE OF APPEARANCE, REQUEST FOR ALL NOTICES, AND DEMAND FOR SERVICE OF PAPERS (Dkt. No. 9).

agreed to extend a revolving line of credit ("Revolver Loan").[6]  Also on September 30, 2015, and in connection with the Revolver Loan, LEI, LII, LMG, and PCI executed a Pledge and Security Agreement ("PSA") in favor of Wells Fargo (as Administrative Agent for the Lenders under the Revolver Loan) and granted security interests in certain personal property to secure amounts owed under the Revolver Loan.

15.     In connection with the execution of the Forbearance Agreement and Third Amendment to Amended and Restated Credit Agreement, on or about August 16, 2017, LHI, 7807, and LHA guaranteed amounts owed under the Revolver Loan.  On August 21, 2017, LHI, 7087, and LHA executed the Pledge and Security Agreement Joinder No. 1 ("PSAJ") in favor of Wells Fargo (as Administrative Agent for the Lenders under the Revolver Loan) and granted security interests in certain personal property to secure amounts owed under Revolver Loan.

16.     Debtors stipulated they owed at least $54,281,351.95 under the Revolver Loan as of the petition date, although this stipulation is subject to the Committee's challenge rights.[7]

Term Loan

17.     On February 6, 2015, LHI entered into an Amended and Restated Credit Agreement with Wells Fargo pursuant to which Wells Fargo made a term loan to LHI ("Term Loan").[8]  LHI granted Wells Fargo deeds of trust and mortgages on certain real property to secure amounts owed under the Term Loan.

---

[6]     The September 30, 2015 Amended and Restated Credit Agreement also provided for a Swingline Loan and access to Letters of Credit.  The security interests granted under the PSA and PSAJ purport to secure all of these debts.  Debtors have used the umbrella term of Revolver Loan or Revolving Loan for all amounts loaned under the September 30, 2015 Amended and Restated Credit Agreement.  For the avoidance of doubt, the Committee's references to the Revolver Loan include all amounts loaned under the September 30, 2015 Amended and Restated Credit Agreement (including the Swingline Loan and Letters of Credit, if any).

[7]     *See* FINAL DIP ORDER ¶¶ M, 31.

[8]     In the Second Amendment to Amended and Restated Credit Agreement, executed on December 7, 2015, Wells Fargo agreed to extend a separate term loan secured by real estate known as the SHP Property ("SHP Term

18.     Subsequently other Lockwood entities guaranteed amounts owed under the Term Loan, including: (i) LII (on February 6, 2015); (ii) LEI (on September 30, 2015); (iii) LMG (on September 30, 2015); and, (iv) PCI (on September 30, 2015).  Pursuant to these guarantees, LII, LEI, LMG, and PCI granted Wells Fargo security interests in monies on deposit with Wells Fargo.  Michael Lockwood individually also guaranteed amounts owed under the Term Loan.

19.     Debtors stipulated they owed at least $26,385,650.08 under the Term Loan as of the petition date, although this stipulation is subject to the Committee's challenge rights.[9]

Airplane Loan

20.     LHA is a borrower under a secured loan with Wells Fargo Equipment Finance ("WFEF") to finance the purchase of an airplane ("Airplane Loan").[10]

21.     In connection with the PSAJ (by which LHA granted Wells Fargo liens on all of its assets to secure amounts owed under the Revolver Loan), on September 8, 2017, LHA and Wells Fargo entered into an Aircraft Mortgage and Security Agreement with respect to this airplane.  Wells Fargo's liens on the airplane are subordinate to WFEF's.[11]  Wells Fargo failed to record its security interests in the airplane with the Federal Aviation Administration until November 3, 2017 (within the preference period).

---

Loan"). Debtors have separately scheduled the Term Loan and the SHP Term Loan, but in their pleadings have included both under the umbrella of the Term Loan. For avoidance of doubt, the Committee's references to the Term Loan include the SHP Term Loan as well.

[9]     *See* FINAL DIP ORDER ¶¶ M, 31.

[10]    A more detailed description of the airplane may be found in *Debtors' Expedited Motion to (I) Sell Aircraft Free and Clear of all Liens, Claims, and Encumbrances, (II) Approve Disbursal of Sale Proceeds, (III) Assume and Assign Certain Executory Contracts and (IV) Grant Related Relief* (ECF No. 369).

[11]    *See Agreed Order on Wells Fargo Equipment Finance, Inc. Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (ECF No. 183).

22.     WFEF moved for relief from the stay and an agreed order was entered allowing the Debtors to either sell the airplane or transfer title to WFEF in full satisfaction of the Airplane Loan.

23.     Debtors located a buyer and have moved for authority to sell the airplane free and clear.  The proposed order authorizes Debtors to pay excess sale proceeds to Wells Fargo on account of its avoidable second liens (after payment of sale costs and satisfaction of WFEF's first-priority lien).[12]

## C.     Bankruptcy Filings and Postpetition Financing

24.     The Debtors began experiencing financial difficulties around November 2016. The Debtors and Defendant entered into a series of forbearance agreements to allow the Debtors' financial condition to stabilize while their advisors attempted to solicit offers for the sale of the business.

25.     On August 25, 2017, Hurricane Harvey struck the Gulf Coast inflicting billions of dollars of damage in the State of Texas, and effectively shutting down Houston's economy for weeks. Areas affected by the hurricane represented half of the Debtors' revenues and approximately 60% of their profits.

26.     The Debtors' business relationship with Defendant soured around November 2017, at which time Defendant accelerated the debt.  Litigation between the Debtors and Defendant ensued.[13]

---

[12]    *See Debtors' Expedited Motion to (I) Sell Aircraft Free and Clear of All Liens, Claims, and Encumbrances, (II) Approve Disbursal of Sale Proceeds, (III) Assume and Assign Certain Executory Contracts, and (IV) Grant Related Relief*, Ex. A (Dkt. No. 369).

[13]    The information from paragraphs 24–26 is taken from the Debtors' Cash Collateral Motion and is provided for background purposes only.

1363864

27.     On January 18, 2018, LHI, LHA, and PCI filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018, LII, LMG, LEI, and 7807 filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and are operating their businesses as debtors-in-possession.  No trustee or examiner has been appointed.

28.     On January 24, 2018, Debtors filed their *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (Dkt. No. 14, the "Cash Collateral Motion"). Use of cash collateral was approved on an interim basis by order entered February 4, 2018.  A subsequent interim order approving use of cash collateral was entered on February 7, 2018.  At a hearing on February 21, 2018, the Court granted the Debtors' request for continued use of cash collateral through March 31, 2018, although no related order was entered. After a hearing on March 31, 2018, the Court entered a third interim (agreed) order authorizing the use of cash collateral through April 28, 2018.

29.     On April 4, 2018, Debtors filed their *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Adequate Relief* (Dkt. No. 285, the "DIP Motion").

30.     On April 30, 2018, the Court entered the *Agreed Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (Dkt. No. 359, the "Final DIP Order").

31.     The Final DIP Order authorized the Debtors to obtain up to $10,000,000.00 in postpetition financing.  In the Final DIP Order, the Debtors stipulated to the validity, priority, and perfection of the Defendant's liens, as well as to the amounts owed under the Revolver Loan and the Term Loan.  The Final DIP Order provided the Committee until May 15, 2018 to file a lawsuit challenging these stipulations, and provided the Committee with automatic standing to bring that lawsuit.[14]

**D.     Committee Investigation**

32.     The Committee and its professionals investigated the validity, enforceability, priority and extent of the Defendant's security interests in the Debtors' assets.  Based on the investigation, the Committee found that certain security interests never attached to collateral, others remained unperfected as of the petition date (and thus subject to avoidance), and still others were perfected within the preference period (and thus subject to avoidance).

Commercial Tort Claims

33.     Although documents executed in connection with the Revolver Loan purport to grant Defendant security interests in the Debtors' commercial tort claims, descriptions of the specific commercial tort claims were not included, as is required in order for a security interest to attach.  As a result of the failure to attach, Defendant lacks any prepetition security interest (perfected or unperfected) in the Debtors' commercial tort claims.

Deposit Accounts

34.     Documents executed in connection with the Revolver Loan grant Defendant a security interest in the Debtors' deposit accounts.  However, a security interest in deposit accounts may only be perfected by control.  Defendant lacked control of certain of the Debtors'

---

[14] *See* FINAL DIP ORDER ¶ 31.

1363864

deposit accounts (including an operating account at Bank of America) as no control agreement related to the accounts existed, nor was Defendant the banking institution at which the deposit accounts were maintained.  Therefore, Defendant's prepetition liens in those deposit accounts are unperfected and subject to avoidance.

<u>Rights of Payment Under Business-Interruption Insurance Policies</u>

35.     Documents executed in connection with the Revolver Loan purport to grant Defendant a security interest in rights of payment under (and other interests in) various insurance policies.

36.     Attachment and perfection of rights of payment under insurance policies fall outside the scope of Article 9.  *See* TBOC § 9.109(d)(8); *see also Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry.)*, 799 F.3d 1 (1st Cir. 2015) (holding equivalent provision of Maine's UCC rendered rights of payment under insurance policy for business interruption insurance outside Article 9's scope); 66 TEX. JUR. SECURED TRANS. § 42 ("Revised Article 9 does not apply to the transfer of an interest in an insurance policy or to the assignment of a claim under the policy.").  Instead courts look to a state's common law or applicable non-Article 9 statutes (if any).  *See Wheeling*, 799 F.3d at 10 (applying Maine common law to issue of perfection of rights of payment under business-interruption insurance policy).

37.     Even if Defendant's liens attached to the rights of payment under the Debtors' insurance policies under applicable (non-Article 9) Texas law, Defendant failed to perfect those liens under applicable (non-Article 9) Texas law.  As a result, Defendant's liens are subject to avoidance.[15]

---

[15]     An exception to Article 9's insurance exclusion is the provision governing secured parties' rights with respect to collateral proceeds.  *See* TEX. BUS. & COMMERCE CODE ("TBCC") § 9.102(65)(E) (defining proceeds to include "insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to

38.     Prepetition the Debtors received $7,850,000.00 in insurance proceeds, of which at least $1,500,000.00 related to business-interruption insurance.  Postpetition the Debtors received an additional $2,150,000.00 in insurance proceeds.

39.     With respect to the $1,500,000.00 payment for business-interruption insurance, the Debtors' records indicate this payment was transferred into their operating account at Bank of America in December 2017.  As explained above, Defendant lacked a perfected security interest in this deposit account.  Thus, Defendant lacked a perfected security interest in the right of payment under the insurance policy, as well as in the deposit account in which the payment was deposited. All, or some portions of, this payment remained in the Debtors' operating account at Bank of America on the petition date.

<u>Assets Subject to a Certificate-of-Title Statute</u>

40.     Documents executed in connection with the Revolver Loan grant Defendant security interests in the Debtors' equipment.  However, in order to perfect a security interest in assets subject to a certificate-of-title statute, the security interest must be recorded on the title and/or a financing statement must be filed with (and validated by) the relevant state's authorities. Defendant failed to follow these requirements for certain assets,[16] and thus its security interests are unperfected and subject to avoidance.  For other assets, Defendant only perfected within the preference period, and thus these security interests are also subject to avoidance.

---

the collateral"); *id.* § 9.109(d)(8) (noting insurance exclusion does not apply to section 9.315); *id.* § 9.315 (governing secured parties' rights upon disposition of collateral and proceeds).  Thus, to the extent Defendant had a perfected security interest in certain underlying collateral (e.g., the Debtors' equipment), and payments under an insurance policy were on account of damage to such collateral, Defendant may have a perfected security interest in such insurance payments under Article 9.  But this exception is no help to Defendant with respect to payments related to business-interruption insurance.

[16]     The Committee requested copies of all certificates of title and financing statements from the Debtors and from Wells Fargo.  Certificates of title for some, but not all, of the Debtors' vehicles were produced.

Money

41.     Documents executed in connection with the Revolver Loan grant Defendant a security interest in the Debtors' money.  However, a security interest in money may only be perfected by possession. Thus, Defendant lacks perfected security interests in money not in its possession, and those security interests are subject to avoidance.

Airplane

42.     Security interests in an airplane must be recorded with the Federal Aviation Administration in order to be perfected. Defendant failed to record until November 3, 2017 (within the preference period) and thus its security interests are subject to avoidance.

## V.     CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT THAT DEFENDANT LACKS LIENS ON DEBTORS' COMMERCIAL TORT CLAIMS

43.     The Committee repeats and realleges the allegations in above paragraphs 1 through 42 inclusive, as though fully set forth herein.

44.     Although documents executed in connection with the Revolver Loan provide for a security interest in commercial tort claims, no description or other information was included,[17] as required in order for a security interest to attach to commercial tort claims.[18]

45.     In addition to the failure to adequately describe the collateral, the Defendant's liens could not have attached to commercial tort claims that were not in existence when the PSA

---

[17]     *See* PSA ¶ 2(e), sched. 2(e); PSAJ ¶ 2.

[18]     Texas's UCC governs attachment of security interests in the collateral because the PSA (and the PSAJ by incorporation) include a Texas choice-of-law provision. *See* PSA ¶ 18(a); PSAJ ¶ 1; *see, e.g.*, *In re Oak Rock Fin., LLC*, 527 B.R. 105, 113 (Bankr. E.D.N.Y. 2015).  For a valid security interest to attach, a security agreement must provide a sufficient description of the collateral.  TBCC § 9.203(b)(3)(A). A description of commercial tort claims by type of collateral (i.e., "commercial tort claims") is insufficient. TBCC § 9.108(e)(1).

and/or PSAJ were executed because after-acquired property clauses are ineffective with respect to commercial tort claims.[19]

46.     As a result of the failure to attach, Defendant lacks a perfected security interest in the Debtors' commercial tort claims (whether they arose before or after execution of the PSA and/or PSAJ).[20]

47.     Accordingly, the Committee (on behalf of the Debtors' estates) is entitled to a declaratory judgment under 28 U.S.C. § 2201(a) that Defendant maintains no security interest in the Debtors' commercial tort claims, including without limitation claims against officers and directors for breaches of fiduciary duty.

## COUNT II: AVOIDANCE OF LIENS ON DEPOSIT ACCOUNTS

48.     The Committee repeats and realleges the allegations in above paragraphs 1 through 47 inclusive, as though fully set forth herein.

49.     Documents executed in connection with the Revolver Loan grant Defendant a security interest in the Debtors' deposit accounts.[21]   However, a security interest in deposit accounts may only be perfected by control.[22]   Defendant lacked control of certain of the Debtors' deposit accounts as no control agreement existed, and Defendant was not the banking institution at which the deposit accounts were maintained.[23]   Therefore, Defendant's liens in these deposit

---

[19]   *See* TBCC § 9.204(b)(2).

[20]   *See* TBCC § 9.308(a).   Texas's UCC also governs perfection because, unless an exception applies, Texas's UCC provides that the law governing perfection of a security interest is the law of the debtor's location, and (for UCC purposes), the Debtors are located in Texas *See* TBCC §§ 9.301(1); 9.307(e).

[21]   *See* PSA ¶ 2(g); PSAJ ¶ 2.

[22]   *See* TBCC § 9.312(b)(1).

[23]   *See* TBCC § 9.104(a).

1363864

accounts are unperfected.  A nonexhaustive list of the deposit accounts with respect to which Defendant's liens are subject to avoidance is attached as **Exhibit A**.[24]

50.     Defendant's unperfected liens are avoidable under section 544, which provides estate representatives the power to avoid any transfer of the Debtors' property (or obligation incurred by the Debtors) that is voidable by a hypothetical judicial lien creditor.  Under Texas law, at the time of the bankruptcy filing a hypothetical creditor could have obtained a judicial lien superior to (and avoided) Defendant's unperfected security interest in the deposit accounts.[25]

51.     The liens are also avoidable as a preferential transfer under section 547.  Granting a security interest qualifies as a transfer.[26]  Notwithstanding the fact that Debtors granted the liens pursuant to the PSA and the PSAJ, because those liens remained unperfected on the petition date, section 547(e)(2)(C) deems that transfer to have occurred (for preference purposes) immediately before the petition.  The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

52.     Section 551 automatically preserves the avoided liens for the benefit of the Debtors' estates.

53.     To the extent Defendant received payments on account of these avoidable liens, Defendant is liable to the Debtors' estates as a subsequent transferee under section 550, as a

---

[24]   Debtors continue to revise their schedules and statements of financial affairs.  To the extent Debtors have additional deposit accounts outside Defendant's control, Defendant's security interest in such deposit accounts would be similarly avoidable.

[25]   *See, e.g.*, TBCC § 9.317(a)(2)(A), *id.* § 9.102(52)(A), (C); *see also Lovett v. Basile (In re Diabetes Am., Inc.)*, 2012 Bankr. LEXIS 5865 at *17–18 (Bankr. S.D. Tex. Dec. 21, 2012).

[26]   *See* 11 U.S.C. § 101(54)(A).

transferee of a preferential transfer under section 547, as a transferee of unauthorized transfers under section 549, or under other applicable law.

54.     Based on the foregoing, the Committee (on behalf of the Debtors' estates) may avoid Defendant's unperfected liens on these deposit accounts.  Once avoided, the liens are preserved automatically for the benefit of the Debtors' estates.  And to the extent Defendant received payment on account of these avoided liens, Defendant is liable to the Debtors' estates as set forth above.

## COUNT III: AVOIDANCE OF LIENS ON RIGHTS OF PAYMENT UNDER BUSINESS-INTERRUPTION INSURANCE POLICIES

55.     The Committee repeats and realleges the allegations in above paragraphs 1 through 54 inclusive, as though fully set forth herein.

56.     Documents executed in connection with the Revolver Loan purport to grant Defendant a security interest in the Debtors' rights of payment under (and other interests in) insurance policies.[27]

57.     Attachment and perfection of security interests in rights of payment under insurance policies fall outside the scope of Article 9.[28]  Instead courts must look to a state's common law (or applicable non-Article 9 statutes, if any).[29]

---

[27]     *See* PSA ¶ 2(d); PSAJ ¶ 2.

[28]     *See* TBCC § 9.109(d)(8); *see also Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry.)*, 799 F.3d 1 (1st Cir. 2015) (holding same provision under Maine's UCC rendered right to payment under insurance policy for business interruption insurance outside Article 9's cope); 66 Tex. Jur. Secured Trans. § 42 ("Revised Article 9 does not apply to the transfer of an interest in an insurance policy or to the assignment of a claim under the policy.").

[29]     *See Wheeling*, 799 F.3d at 10 (applying Maine common law to issue of perfection of rights of payment under business-interruption insurance policy).

58.     Even if Defendant's security interests attached to Debtors' rights to payment under insurance policies pursuant to non-Article 9 Texas law, Defendant failed to perfect these security interests under non-Article 9 Texas law.

59.     Section 544 provides estate representatives the power to avoid any transfer of the Debtors' property voidable by a hypothetical judicial lien creditor. Under Texas law, at the time of the bankruptcy filing a hypothetical creditor could have obtained a judicial lien superior to (and avoided) Defendant's unperfected security interests at the time of filing.

60.     The liens are also avoidable as a preferential transfer under section 547.  Granting a security interest qualifies as a transfer.[30] Notwithstanding the fact that the Debtors granted the liens pursuant to the PSA and the PSAJ, because the liens remained unperfected on the petition date, section 547(e)(2)(C) deems that transfer to have occurred (for preference purposes) immediately before the petition. The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

61.     Section 551 automatically preserves the avoided liens for the benefit of the Debtors' estates.

62.     To the extent Defendant received payments on account of these avoidable liens, Defendant is liable to the Debtors' estates as a subsequent transferee under section 550, as a transferee of preferential transfers under section 547, as a transferee of unauthorized transfers under section 549, or under other applicable law.

---

[30]     *See* 11 U.S.C. § 101(54)(A).

17

63.     Based on the foregoing, the Committee (on behalf of the Debtors' estates) may avoid Defendant's unperfected security interests in rights of payment under insurance policies. Once avoided, the liens are preserved automatically for the benefit of the Debtors' estates. And to the extent Defendant received payment on account of these avoided liens, Defendant is liable to the Debtors' estates as set forth above.

### COUNT IV: AVOIDANCE OF LIENS ON ASSETS SUBJECT TO CERTIFICATE-OF-TITLE STATUTES

64.     The Committee repeats and realleges the allegations in above paragraphs 1 through 63 inclusive, as though fully set forth herein.

65.     Documents executed in connection with the Revolver Loan purport to grant Defendant a security interest in, among other things, the Debtors' Equipment.[31] However, in order to perfect a security interest in property subject to a certificate-of-title statute,[32] under Texas law the security interest must be recorded on the title,[33] and under Louisiana law the financing statement covering the titled motor vehicle must be received and subsequently validated by the Louisiana Department of Public Safety and Corrections (for notation on the title).[34] Upon information and belief, Defendant has not filed a financing statement against the Debtors in Louisiana.

---

[31]   *See* PSA ¶ 2(i); PSAJ ¶ 2.

[32]   Under the Texas UCC, perfection of goods covered by a certificate of title is the law of the jurisdiction issuing the certificate of title. *See* TBCC § 9.303(c). Upon information and belief, the Debtors' vehicles are concentrated in Texas and Louisiana and are subject to certificate-of-title statutes in those states.

[33]   TEX. TRANSP. CODE § 501.111.

[34]   LA. R.S. §§ 10:9-516(a)(2), 32:710.

1363864

66.     Defendant failed to follow these requirements for various vehicles subject to a certificate-of-title statute, and thus the related liens were unperfected as of the petition date.  A nonexhaustive list of these vehicles is attached as **Exhibit B**.[35]

67.     Defendant's security interests in these vehicles are avoidable under both section 544 and section 547.  Section 544 provides estate representatives the power to avoid any transfer of the Debtors' property voidable by a hypothetical judicial lien creditor.  At the time of the bankruptcy filing a hypothetical creditor could have obtained a judicial lien superior to (and avoided) Defendant's unperfected security in these vehicles.[36]  The liens are also avoidable as a preferential transfer under section 547.  Granting a security interest qualifies as a transfer.[37] Notwithstanding the fact that Debtors granted the liens pursuant to the PSA and the PSAJ, because those liens remained unperfected on the petition date, section 547(e)(2)(C) deems that transfer to have occurred (for preference purposes) immediately before the petition date.  The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

---

[35]   Debtors continue to revise their schedules and statements of financial affairs.  To the extent Debtors have additional assets subject to certificates-of-title statutes for which Defendant has not followed the applicable requirements for perfection, Defendant's security interest in such assets would be similarly avoidable.

[36]   *See* TBCC § 9.317(a)(2)(A), *id.* § 9.102(52)(A), (C); LA. R.S. § 10:9-317; *see also Lovett v. Basile (In re Diabetes Am., Inc.)*, 2012 Bankr. LEXIS 5865 at *17–18 (Bankr. S.D. Tex. Dec. 21, 2012).

[37]   11 U.S.C. § 101(54)(A).

68.     For other vehicles subject to a certificate-of-title statute, Defendant perfected its security interests within the preference period.  A nonexhaustive list of these vehicles is attached as **Exhibit C**.[38]

69.     Defendant's security interests in these vehicles are avoidable under section 547 as the granting of the liens constitutes a preferential transfer.  Notwithstanding the fact that Debtors granted the liens pursuant to the PSA and the PSAJ, because those liens were not perfected within 30 days, section 547(e)(2)(B) deems that transfer to have occurred (for preference purposes) at the time of perfection.  The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

70.     Section 551 automatically preserves avoided liens for the benefit of the Debtors' estates.

71.     To the extent Defendant received payments on account of these avoidable liens, Defendant is liable to the Debtors' estates as a subsequent transferee under section 550, as a transferee of preferential transfers under section 547, as a transferee of unauthorized transfers under section 549, or under other applicable law.

72.     Based on the foregoing, the Committee (on behalf of the Debtors' estates) may avoid Defendant's security interests in these vehicles subject to a certificate-of-title statute.  Once avoided, the liens are preserved automatically for the benefit of the Debtors' estates.  And

---

[38]     Debtors continue to revise their schedules and statements of financial affairs.  To the extent Debtors have additional assets subject to certificates-of-title statutes perfected within the preference period, Defendant's security interest in such assets would be similarly avoidable.

to the extent Defendant received payment on account of these avoided liens, Defendant is liable to the Debtors' estates as set forth above.

## COUNT V: AVOIDANCE OF LIENS ON MONEY

73. The Committee repeats and realleges the allegations in above paragraphs 1 through 72 inclusive, as though fully set forth herein.

74. Documents executed in connection with the Revolver Loan purport to grant Defendant a security interest in the Debtors' money.[39]  However, a security interest in money may only be perfected by possession.[40]  Thus, Defendant lacks a perfected security interest in money not in its possession.

75. Security deposits, utility deposits, surety deposits, and performance bonds all constitute money.[41]  A nonexclusive list of items that qualify as money, and which are outside of Defendant's possession, is attached as **Exhibit D**.[42]

76. Section 544 provides estate representatives the power to avoid any transfer of the Debtors' property voidable by a hypothetical judicial lien creditor.  At the time of the bankruptcy filing a hypothetical creditor could have obtained a judicial lien superior to (and avoided) Defendant's unperfected security interest in money.[43]

---

[39] *See* PSA ¶ 2(b); PSAJ ¶ 2.

[40] *See* TBCC § 9.312(b)(3).

[41] *See, e.g., In re Atlanta Times, Inc.*, 259 F. Supp. 820, 823, 827 (N.D. Ga. 1966), *aff'd sub nom. Sanders v. Nat'l Acceptance Co. of Am.*, 383 F.2d 606 (5th Cir. 1967) (security deposits constitute money); *In re Barr*, 180 B.R. 156 (Bankr. N.D. Tex. 1996) (utility deposit held to be money, not a general intangible); *See Charlotte Dev. Ptnrs. Inc. v. Tricom Pictures & Prods.*, 33 So. 3d 690 (Fla. 4th DCA 2009).

[42] Debtors continue to revise their schedules and statements of financial affairs.  To the extent Debtors have additional assets constituting money, and which are not in Defendant's possession, Defendant's security interest in such assets would be similarly avoidable.

[43] *See, e.g.*, TBCC § 9.317(a)(2)(A), *id.* § 9.102(52)(A), (C); *see also Lovett v. Basile (In re Diabetes Am., Inc.)*, 2012 Bankr. LEXIS 5865 at *17–18 (Bankr. S.D. Tex. Dec. 21, 2012).

77. The liens are also avoidable as a preferential transfer under section 547. Granting a security interest qualifies as a transfer.[44]  Notwithstanding the fact that Debtors granted the liens pursuant to the PSA and the PSAJ, because those liens remained unperfected on the petition date, section 547(e)(2)(C) deems that transfer to have occurred (for preference purposes) immediately before the petition.  The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

78. Section 551 automatically preserves avoided liens for the benefit of the Debtors' estates.

79. To the extent Defendant received payments on account of these avoidable liens, Defendant is liable to the Debtors' estates as a subsequent transferee under section 550, as a transferee of preferential transfers under section 547, as a transferee of unauthorized transfers under section 549, or under other applicable law.

80. Based on the foregoing, the Committee (on behalf of the Debtors' estates) may avoid Defendant's unperfected security interests in money.  Once avoided, the liens are preserved automatically for the benefit of the Debtors' estates.  And to the extent Defendant received payment on account of these avoided liens, Defendant is liable to the Debtors' estates as set forth above.

### COUNT VI: AVOIDANCE OF LIENS ON THE AIRPLANE

81. The Committee repeats and realleges the allegations in above paragraphs 1 through 80 inclusive, as though fully set forth herein.

---

[44] *See* 11 U.S.C. § 101(54)(A).

82.     In connection with the PSAJ (by which LHA granted Wells Fargo liens on all of its assets to secure amounts owed under the Revolver Loan), on September 8, 2017, LHA and Wells Fargo entered into an Aircraft Mortgage and Security Agreement with respect to this airplane.

83.     In order for security interests in an airplane to be perfected, the instrument conveying the security interests must be recorded with the Federal Aviation Administration.[45] Yet Defendant failed to record until November 3, 2017.

84.     Defendant's liens are avoidable under section 547.  Granting a security interest qualifies as a transfer.[46]  Notwithstanding the fact that Debtors granted the liens pursuant to the PSAJ and/or the Aircraft Mortgage and Security Agreement, because those liens were not perfected within 30 days, section 547(e)(2)(B) deems that transfer to have occurred (for preference purposes) at the time of perfection. In other words, November 3, 2017—which is within the preference period.  The remaining elements of section 547 are satisfied as the transfer was to or for the benefit of a creditor, was on account of antecedent debt, was made while the Debtors were insolvent, and enables Defendant to receive more than it otherwise would in a hypothetical chapter 7 proceeding.

85.     Section 551 automatically preserves avoided liens for the benefit of the Debtors' estates.

86.     To the extent Defendant received payments on account of these avoidable liens, Defendant is liable to the Debtors' estates as a subsequent transferee under section 550, as a

---

[45]     *See* 49 U.S.C. § 44108.

[46]     *See* 11 U.S.C. § 101(54)(A).

transferee of preferential transfers under section 547, as a transferee of unauthorized transfers under section 549, or under other applicable law.

87.     Based on the foregoing, the Committee (on behalf of the Debtors' estates) may avoid Defendant's security interests in the aircraft.  Once avoided, the liens are preserved automatically for the benefit of the Debtors' estates.  And to the extent Defendant received payment on account of these avoided liens, Defendant is liable to the Debtors' estates as set forth above.

<u>**COUNT VII: OBJECTION TO DEFENDANT'S CLAIMS**</u>

88.     The Committee repeats and realleges the allegations in above paragraphs 1 through 87 inclusive, as though fully set forth herein.

89.     The Debtors have scheduled Defendant as a creditor in connection with amounts allegedly owed under the Revolver Loan and the Term Loan.  The Committee objects to Defendant's claims pursuant to 11 U.S.C. § 502 on behalf of the Debtors' estates.

90.     As set forth above, Defendant is an entity from which property is recoverable under section 550, and is the transferee of transfers avoidable under sections 544, 547, 548, 549 and other applicable law.  Defendant has not yet paid the Debtors' estates the amount for which it is liable or returned the property subject to avoidance.  As a result, Defendant's claims may be disallowed under section 502(d).

91.     Debtors stipulated they owed at least $54,281,351.95 under the Revolver Loan as of the Petition Date. Debtors further stipulated they owed at least $26,385,650.08 under the Term Loan as of the Petition Date.  The Committee objects to the amount of Defendant's claims with respect to the Revolver Loan and Term Loan as it has not received documentation sufficient to confirm that these are the amounts owed.  In addition, as Debtors stipulated to owing *at least*

these amounts, the Committee reserves its rights to object to the extent Defendant later argues it is owed more than the amounts to which Debtors stipulated.

## VI.   PRAYER

The Committee respectfully requests that the Court enter judgment: (i) declaring that Defendant has no security interest in Debtors' commercial tort claims; (ii) avoiding Defendant's security interests in certain deposit accounts and preserving same for the benefit of the Debtors' estates; (iii) avoiding Defendant's security interests in rights of payment under insurance policies and preserving same for the benefit of the Debtors' estates; (iv) avoiding Defendant's liens on certain assets subject to certificate-of-title statutes and preserving same for the benefit of the Debtors' estates; (v) avoiding Defendant's liens on money not within Defendant's possession, and preserving same for the benefit of the Debtors' estates; (vi) avoiding Defendant's liens on the aircraft and preserving same for the benefit of the Debtors' estates; (vii) finding Defendant liable to the Debtors' estates to the extent the Defendant received payment on account of any avoidable liens; (viii) disallowing, or in the alternative reducing, Defendant's claims; and, (ix) granting such other and further relief as the Court deems just and equitable.

 Dated: May 15, 2018

                              MCKOOL SMITH, P.C.


                              By: */s/ Benjamin W. Hugon*
                                    Christopher D. Johnson (SBN 24012913)
                                    Benjamin W. Hugon (SBN 24078702)
                                    Veronica Manning (SBN 24098033)
                                    600 Travis, Suite 7000
                                    Houston, TX 77002
                                    Tel: 713-485-7300
                                    Fax: 713-485-7344

1363864

-and-

Nicholas A. Foley (SBN 07208620)
300 Crescent Court, Suite 1500
Dallas, TX 75201
Tel: (214) 978-4000
Fax: (214) 978-4044

***Counsel for the Official Committee of Unsecured
Creditors***

26